UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| YEHUDAH ZVI, | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | No.  1:22-CV-00981-DH |
| | § | |
| NEAL LEONARD, CHIEF | § | |
| DEPUTY, BADGE NUMBER 102; | § | |
| KRISTEN VENTO, DEPUTY, | § | |
| BADGE NUMBER 117; JIMMY | § | |
| FOX, SERGEANT, BADGE | § | |
| NUMBER 106; KEITH TAGGART, | § | |
| DEPUTY, BADGE NUMBER 111; | § | |
| RANDALL MATHEW, DEPUTY, | § | |
| BADGE NUMBER 113; AND | § | |
| MARGARITA DIAZ-RAMIREZ, | § | |
| *Defendants* | § | |

## ORDER

Before the Court is Defendants Neal Leonard, Jimmy Fox, Kristen Vento, Keith Taggart, Randall Mathew, and Margarita Diaz Ramirez's (collectively, "Defendants") Motion for Summary Judgment, Dkt. 55. After reviewing the related briefing and relevant case law, the Court grants Defendants' Motion for Summary Judgment.

## I.     BACKGROUND

This case stems from Plaintiff Yehudah Zvi's arrest on October 13, 2021. The ball got rolling when Patricia Campa, Zvi's new neighbor, called 911 to report that Zvi was walking around his yard with two guns and that he pointed one of them at

her dog, a "big goldendoodle." Dkt. 55, at 2; Dkt. 55-1, at 0:00:32; Dkt. 55-7, at 3.[1] A call for service was initiated and Deputies Taggart and Vento went to Campa's home to investigate the call. Dkt. 55, at 2; Dkt. 55-6.

Deputy Vento arrived first at the scene and spoke with Campa. Dkt. 55-2, at 0:07:26. Campa told Deputy Vento that Zvi had two guns in his possession, an "AR and a pistol." *Id.* at 0:07:45. Campa explained that she had been in the backyard with her dog when Zvi "took out [his] gun and pointed it at [her] dog." *Id.* at 0:07:50. Campa recounted that, when her dog ran behind her, Zvi pointed his gun at both of them and "cocked it like he was going to shoot." *Id.* Campa then agreed to provide a statement regarding the incident. *Id.*; *see also* Dkt. 55-7 (Campa's statement). Campa said that she wanted to file a complaint and that she was "truly scared." Dkt. 55-2, at 0:15:50.[2]

After talking with Campa, Deputies Taggart and Vento approached Zvi to investigate. *Id.* at 0:23:20. Zvi was armed with a holstered pistol and what appeared to be an assault rifle strapped around his chest. *Id.* Deputies Taggart and Vento both identified themselves to Zvi, who appeared to record the encounter with his cell phone. *Id.* at 0:23:25. Deputy Taggart explained why the officers were there and the

---

[1] On a motion for summary judgment, the Court need not accept the non-movant's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

[2] Zvi alleges, despite contradictory video evidence, that that Deputies Taggart and Vento told Campa exactly how to write the complaint. Dkt. 1, at 2. The video evidence demonstrates that the officers merely instructed Campa on the potential criminal charges Zvi's conduct would be subject to. Def. Ex. 2, at 0:16:30. Campa's complaint reflects that fact, as it recounts the events as she described earlier in the interaction. *See id.* at 0:07:20.

nature of the allegations against Zvi. *Id.* at 0:24:30. Deputies Taggart and Vento asked Zvi to promise not to point his weapon at Campa, but Zvi refused. *Id.* at 0:30:20.

During the investigation, Zvi tried to go back into his home despite Deputies Taggart and Vento's commands to stop. *Compare id.* at 0:31:25 (Deputy Vento saying, "I'm not done here") *and id.* at 0:32:55 (Deputy Vento saying "you're not free to go") *with id.* at 0:33:00 (Zvi walking back to his house). *See also id.* at 0:33:10 (Deputy Taggart saying "I don't know how to pronounce your name, sir, but I did not let you go. You are being—you are, you are detained by me ... You are not free to leave"). Deputies Taggart and Vento then entered Zvi's property and informed him that he was under arrest. *Id.* at 0:33:38. Deputy Vento removed Zvi's pistol from its holster and took control of the weapon. *Id.* Deputy Taggart then contacted Sergeant Jimmy Fox to discuss the situation. Dkt. 55-3, at 0:35:00. Ultimately, the officers decided to place Zvi under arrest. *Id.* at 0:38:30.

After telling Zvi he was under arrest, Deputy Taggart asked Zvi to raise his shirt and proceeded to "pat him down" to determine if he had any additional weapons. *See* Dkt. 55-2, at 0:53:00; Dkt. 55-3 at 0:40:00. The pat-down took less than 20 seconds. Zvi claims that this pat-down constituted "Indecent Assault / Sexual Battery," alleging that "Deputy Keith Taggart literally Dug — was Rubbing, into my anus area, grabbed — was Rubbing — pulled on my testicles and grabbed — was Rubbing — pulled on my penis." Dkt. 1, at 8. But the video evidence clearly contradicts that assertion. As demonstrated by Defendants' Exhibits 2 and 3, Taggart's pat-down was routine and did not focus on Zvi's genitals or anus.

Eventually, Zvi was transported to Blanco County Jail in Johnson City, Texas without further incident. Dkts. 55-4, 55-5, 55-6. The criminal charge against Zvi for Deadly Conduct remains pending.

On May 31, 2022, BRCK Criminal Defense, Zvi's attorney, emailed Defendant Margarita Ramiraz, the Chief Court Clerk of Blanco County, indicating their office would be filing a Motion to Return Zvi's Property—specifically, Zvi's pistol that was taken during his October 13, 2021, arrest. Dkt. 55-8, at 10. BRCK then served the Blanco County Attorney's Office with a Motion for Release and Return of Personal Property. Dkt. 55-9. A week later, Ramirez emailed BRCK acknowledging receipt of the motion, but indicated that it needed to be addressed and filed with the City of Blanco, Municipal Judge. Dkt. 55-8, at 11. The matter was never set for hearing and never considered by the court. Dkt. 55, at 4.

## II.    LEGAL STANDARD

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most

favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III.     DISCUSSION

Zvi is representing himself in this dispute. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held

to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up, citations omitted); *see* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice."). Accordingly, the Court will do its best to interpret Zvi's pleadings charitably. Nevertheless, Zvi must "still comply with the rules of civil procedure and make arguments capable of withstanding summary judgment." *Ogbodiegwu v. Wackenhut Corr. Corp.*, 202 F.3d 265, 265 (5th Cir. 1999).

Interpreted charitably, Zvi's complaint lays out five causes of action: (1) illegal seizure/false arrest; (2) excessive force/sexual assault; (3) equal protection violation/First Amendment retaliation; (4) violation of due process; and (5) internal policy violations. None withstand scrutiny.

### A.    Illegal Seizure/False Arrest

Zvi first asserts a claim for either illegal seizure or false arrest. *See, e.g.*, Dkt. 1, at 4 ("What Exigent Circumstances indicated / demanded Deputy Keith Taggart and Deputy Kristen Vento ('WE') a warrantless arrest? The same when Deputy Sin … came onto our property without a warrant as well."); *id.* at 7 ("Deputy Keith Taggart at this point is making me (Yehudah Zvi) a choice of a Forced Confession or False Imprisonment."); *id.* at 9 ("No matter how I continue to prove my innocence that I did not do they have claimed (By not admitting to their statement(s)) and invoking my Constitutional Rights), Deputy Keith Taggart and Deputy Kristen Vento were going to either going to get a Forced Confession out of me (Yehudah Zvi) or False

Imprisonment with a Felony."); *id.* at 10 ("my choices are Forced Confession or False Imprisonment").

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. To comply with the Fourth Amendment, "a warrantless arrest must be based on probable cause." *United States v. Castro*, 166 F.3d 728 , 733 (5th Cir. 1999). "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense." *Id.* "There is no cause of action for false arrest under § 1983 unless the arresting officer lacked probable cause." *Casanova v. City of Brookshire*, 119 F. Supp. 2d 639, 651 (S.D. Tex. 2000).

Defendants had probable cause to arrest Zvi for deadly conduct. *See* Tex. Penal Code Ann. § 22.05 ("A person commits an offense [of deadly conduct] if he recklessly engages in conduct that places another in imminent danger of serious bodily injury."). Deputies Taggart and Vento responded to a 911 call alleging that Zvi was armed with two weapons and threatening his neighbor and her dog. When Deputies Taggart and Vento arrived at the scene, Campa confirmed the details she had recounted during her 911 call. Further confirming those allegations, Zvi was armed when Taggart and Vento arrived.

The Fifth Circuit has found probable cause when faced with similar circumstances. *United States v. Burbridge*, 252 F.3d 775, 778 (5th Cir. 2001) ("The

Celovsky's citizen eyewitness account of Burbridge's illegal conduct, as communicated to Officer Handowski through the 911 dispatcher, along with their identification of Burbridge as the handgun violator both through the 911 dispatcher and by directly signaling Handowski with their car's headlights, provided the officers with probable cause to believe that Burbridge had committed the offense of publicly carrying a handgun."); *United States v. Lopez*, 284 F. App'x 156, 159 (5th Cir. 2008) ("Under these circumstances, we agree with the district court's determination that Officer Howard had probable cause to make the stop based upon the 911 caller's account of Lopez's criminal activity and his own efforts to corroborate the caller's identification of Lopez's vehicle."); *Wolfe v. Meziere*, 566 F. App'x 353, 355 (5th Cir. 2014) ("Here, based on the report made by the 911 caller that Appellant was 'staggering around' the hotel with 'a gun on the side of his hip' and 'threatening people' while 'wasted, drunk or on some kind of drugs,'—combined with Appellee's observations once they arrived on the scene—the Appellees reasonably concluded that they had probable cause to believe that Appellant had interfered with the hotel's business customers[.]").

Accordingly, the Court will grant Defendants summary judgment with respect to Zvi's claim of illegal seizure/false arrest.

### B.    Excessive Force/Sexual Assault

Zvi next asserts a claim for either excessive force or sexual assault. *See, e.g.*, Dkt. 1, at 4 ("At this point of the video, he actually has to be held back by Deputy Kristen Vento due to his violent behavior."); *id.* at 5 ("I'm surprised Deputy Keith

Taggart didn't pull out his service weapon and unload his entire clip into my body. I am serious."); *id.* at 8 ("It was during the pat down that Public Servant Deputy Keith Taggart committed a Sexual Battery … on me (Yehudah Zvi). Deputy Keith Taggart literally Dug — was Rubbing, into my anus area, grabbed — was Rubbing — pulled on my testicles and grabbed — was Rubbing — pulled on my penis.").

"To prevail on an excessive force claim, a plaintiff must establish: '(1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007) (citation omitted). Additionally, to ensure officer safety during a stop, "police may frisk the subject for weapons that they reasonably suspect he may carry." *United States v. Scroggins*, 599 F.3d 433, 441 (5th Cir. 2010).

No reasonable juror could find that Deputy Taggart used excessive force or sexually assaulted Zvi. As uncontroverted video evidence demonstrates, Taggart conducted a standard frisk that was not excessive and was not sexual in nature. *See* Dkt. 55-2 at 0:53:04. This Court has rejected claims similar to Zvi's. *See Trevino v. City of Austin*, No. 1:21-CV-187-RP, 2023 WL 2056042, at *5 (W.D. Tex. Jan. 24, 2023) (granting officers summary judgment where video evidence demonstrated that officer touched suspect's breast for three seconds during frisk). Further, the frisk was supported by reasonable suspicion—indeed, Taggart knew that Zvi had at least two guns in his possession. Accordingly, the Court will grant Defendants summary judgment with respect to Zvi's excessive force/sexual assault claim.

## C.      Equal Protection Violation/First Amendment Retaliation

Zvi next asserts a claim for either violation of the equal protection clause or retaliation for exercise of his First Amendment rights. *See, e.g.*, Dkt. 1, at 4 ("[T]hat equal protection has not been applied with my family, Under the 'class of one.'"); *id.* at 7 ("If what was stated in Blanco County Clerk Laura Walla's official capacity is true, this sounds like a clear violation of the separation of powers of governance in our Constitutional Republic."); *id.* at 14-15 ("I have proven: 42 Under USC Section 1983—Civil Action for Deprivation of Rights 3. Equal Protection Claims: Equal Protection claims can be brought where one class of people (Jewish) is treated differently than another … The Courts have also recognized 'class of one' claims."); *id.* at 23 ("I am still held under False Pretense Charges, Political Retribution, and Fictitious Lies.").

Zvi's equal protection claim fails. "To establish a Fourteenth Amendment equal-protection violation, [Zvi] must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *McFaul v. Valenzuela*, 684 F.3d 564, 577 (5th Cir. 2012) (citation and internal quotation omitted). Zvi claims that he was treated differently because he is Jewish. But Zvi does not allege that a similarly situated class of individuals—that is, individuals unprovokedly pointing a gun at another—are treated any differently than he was. Moreover, there is no evidence whatsoever that the officers' actions were motivated by discriminatory intent. In short, there is nothing to demonstrate that Zvi was treated unfairly for being Jewish.

10

Zvi's "class of one" equal protection claim fares even worse. To allege a successful "class of one" equal protection claim, a plaintiff must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). There was clearly a rational basis to treat Zvi differently from others—namely, a report that he aimed a gun at his neighbor without provocation. That is fatal to his class of one equal protection claim.

Finally, Zvi's First Amendment retaliation claim fails as well. To prove a First Amendment retaliation claim, Zvi "must show that (1) [he was] engaged in constitutionally protected activity, (2) the defendant's actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendant's adverse actions were substantially motivated against [Zvi's] exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). But Zvi's claim trips at the first hurdle, because Zvi was not engaged in a constitutionally protected activity—there is no constitutional right to point a gun at one's neighbor.

Accordingly, the Court will grant Defendants summary judgment with respect to Zvi's Equal Protection/First Amendment retaliation claim.

### D.   Violation of Due Process

Zvi next asserts a claim for violation of his due process rights. *See, e.g.*, Dkt. 1, at 3 ("With Deputy Kristen Vento … Deputy Keith Taggart … doing a verbally word-by-word and Complainant/Victim Patricia Campa written Affidavit, they have

committed Sec. 42.06 FALSE ALARM OR REPORT"); *id.* at 6 ("As I am writing this document I have not been given my right to a Speedy Trial, in Court to Face my Accuser; which is my fifth, sixth, seventh, and eighth amendment of the United States Constitution, that all deals with the rights of people accused of crimes."); *id.* at 8 ("Deputy Kristen Vento and Keith Taggart are Judge, Jury, and Executioner (False Imprisonment). My fate has been determined already. Deputy Keith Taggart and Deputy Kristen Vento are now Secret State Police, Gestapo – Nazi, Suppression of resistance and persecution."); *id.* at 14 ("It is very obvious Deputy Randall Mathew … Deputy Kristen Vento and Deputy Keith Taggart are regurgitation/in cahoots/all in concert together with the residence of 481 Rust Ranch Rd & 431 Rust Ranch Rd.").

To establish a claim for a procedural due process violation, Zvi "must demonstrate that a state actor (1) deprived him (2) of life, liberty, or property (3) without due process of law." *Woodard v. Andrus*, 649 F. Supp. 2d 496, 505 (W.D. La. 2009). "To prove a substantive due process claim, [Zvi] must show the challenged government action is arbitrary, unreasonable, or has no relationship to a legitimate government interest." *Brantley v. Kuntz*, 98 F. Supp. 3d 884, 889 (W.D. Tex. 2015).

It is unclear *what* exactly Zvi claims violates his due process rights. To the extent Zvi alleges he was forced to give a confession, Dkt. 57, at 7, the video evidence clearly contradicts that allegation. If Zvi is alleging that Ramirez violated his due process rights by failing to accept the filing of his Motion to Return Personal Property, the Court rejects that argument. Requiring a plaintiff to refile a non-conforming motion is consistent with due process of law and therefore cannot form the basis for

a violation of due process claim. In short, Zvi has not alleged a claim for violation of due process against any defendant. Accordingly, the Court will grant Defendants summary judgment with respect to Zvi's claim for violation of due process.

### E.     Violation of Internal Policies

Zvi finally asserts a claim for violation of Blanco County policies. *See, e.g.*, Dkt. 1, at 5 ("Texas Penal Code and Blanco Policy Manual Responsibility to Serve; when dealing with the public, members shall be courteous and respectful[.]"); *id.* at 15 ("Deputies Kristen Vento, Randall Mathew and Keith Taggart just broke Blanco County Sheriff Policy Manual."); *id.* at 20 ("Ramirez gave out Legal Advice, Dishonored The Judiciary and decided not to follow The Law in accordance to Texas Government Code Chapter 51 Subchapter E. County Clerks, Sec. 51.402 Duties and Powers for a Motion to Return Property by the Law Firm my wife and I hired."); *id.* at 21 (describing Blanco County's Policy Manual).

This claim fails as a matter of law. "[V]iolations of internal procedures or policies are insufficient to give rise to constitutional violations." *Banks v. Herbrich*, 90 F.4th 407, 416 (5th Cir. 2024). Accordingly, any alleged internal policy violation cannot form the basis for a due process claim. *Stern v. Tarrant Cnty. Hosp. Dist.*, 778 F.2d 1052 (5th Cir. 1985) ("[A] violation of state law is neither a necessary nor a sufficient condition for a finding of a due process violation."). Likewise, internal policy violations cannot form the basis for a section 1983 claim. *Bittakis v. City of El Paso*, 480 F. Supp. 2d 895, 909 (W.D. Tex. 2007) ("However, state law violations do not form the basis of § 1983 liability.").

Accordingly, the Court will grant summary judgment to Defendants with respect to Zvi's claim for violations of internal policies. To the extent Zvi's complaint alleges any additional causes of action, they are unintelligible and therefore waived.

### IV.    CONCLUSION

The Court **GRANTS** Defendants' Motion for Summary Judgment, Dkt. 55. Final judgment shall issue.

SIGNED February 26, 2024.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE